MOBLEY, superintendent of banks, *v.* PERSONIUS *et al.; et vice versa.*

Nos. 7764, 7765. FEBRUARY 18, 1931.
REHEARING DENIED FEBRUARY 25, 1931.

*Park & Strozier,* for plaintiff in error in main bill of exceptions.
*Davis & Friedin, Powell & Dykes; Jones, Jones, Johnston & Russell,* and *C. L. Shepard,* contra.

BECK, P. J.   W. Bruce Nichols, of Dooly County, Georgia, died intestate on November 19, 1928.   At the time of his death he owned 100 shares of the capital stock of Citizens Bank of Fort Valley, of the par value of $100 per share.   Fifty shares of the stock were acquired by him on December 16, 1909, and fifty shares on June 25, 1920.   This bank suspended business on November 27, 1928.   It had operated continuously since its organization about the year 1909.   In January, 1929, A. C. Pate and A. R. Ware duly qualified as administrators of the estate of Nichols.   On February 7, 1929 A. B. Mobley, as superintendent of banks in charge of the Citizens Bank of Fort Valley in liquidation, issued an execution for $10,000 against the administrators of Nichols, the execution being based upon an assessment of $100 per share on the 100 shares of the capital stock owned by Nichols.   The Chase National Bank of New York is a creditor of Nichols, holding promissory notes upon which there was due (as admitted by the administrators of the estate and all parties to this case), on February 18, 1930, a balance $6,404.30 principal, and $181.90 interest.   The administrators reduced the assets of Nichols' estate to cash, and creditors were demanding payment of their claims.   The funds in the hands of the administrators were insufficient to pay creditors in full.   The Chase National Bank and other creditors holding promissory notes against the estate were demanding payment in full of their claims as having priority over the stock execution in favor of Mobley, superintendent of banks; and the superintendent was claiming that he was entitled to full payment of the execution as a prior lien upon all of the assets of the estate.   In this situation the administrators brought a petition for direction, in which the facts were fully recited.   Demurrer and answer were filed by the superintendent of banks.   At the hearing all of the creditors were represented, and they agreed that the judge should pass upon all questions of law and fact and pass a final order distributing the funds in the hands of the administrators.   The demurrer was overruled, and a decree was entered distributing the funds in the hands of the administrators, and holding that creditors of the estate of Nichols who held promissory notes of his were entitled to full payment of their demands, and that the claim represented by Mobley, superintendent of banks, is an unsecured claim, unliquidated, and taking rank as an open account only.

The demurrer of the superintendent of banks, contains two general grounds directed to the entire petition in so far as it refers to him. In the third ground paragraphs of the petition 15 to 20, inclusive, were attacked because "these paragraphs set out no cause of action at law or in equity against this defendant," and the demurrant insists that under the law applicable to the facts pleaded "this defendant has a lien on the assets of said estate and is entitled to be paid in full before the other creditors named in the petition are paid anything on their demands against the estate." The claims of certain creditors were allowed, to which allowance there is no exception. The exception to the judgment overruling the demurrer filed by the superintendent of banks, and his exceptions to the decree raise the questions to be decided under the main bill of exceptions.

■ The court did not err in overruling the demurrer to the entire petition. Section 4597 of the Civil Code is as follows: "In cases of difficulty in construing wills, or in distributing estates, in ascertaining the persons entitled, or in determining under what law property should be divided, the representative may ask the direction of the court, but not on imaginary difficulties or from excessive caution." In view of the facts alleged in the petition, the court properly refused to dismiss it and retained it for the purpose of giving direction.

■■ The third ground of the demurrer filed by the superintendent of banks is as follows: "Because said paragraphs set out no cause of action at law or in equity against this defendant, and because, under the law applicable to the facts pleaded in said paragraphs, this defendant has a lien on the assets of said estate and is entitled to be paid in full before the other creditors named in said petition are paid anything on their demands against said estate." This ground of demurrer, in so far as it seeks to have eliminated from the petition paragraphs 15 to 18, inclusive, was properly overruled; for these paragraphs last referred to are a part of the statement of the situation of the estate of the decedent, and the claims made against it, which authorizes the petitioners to pray for and have the direction of the court in the distribution of the estate. But the demurrer should have been sustained as to grounds 19 and 20, which are as follows: "(19) Petitioner further shows to the court that the said A. B. Mobley, Superintendent of Banks of the

State of Georgia, was not authorized under the statute to issue said assessment execution on the 7th day of February, 1929, and place the same upon the general execution docket of Dooly County, for the reason that petitioners had not qualified as such administrators until the 7th day of January, 1929 and petitioners had not had twelve months as allowed by law to wind up the affairs of said estate, and that the issuing of said execution was null and void and the same is no lien against the estate of the said deceased nor against your petitioners. (20) Petitioners further show to the court that said assessment, in the nature of an execution, is not a lien against the estate of said deceased; neither is the same, under the law, a liquidated demand; and that said assessment should and does rank with open accounts in the distribution and winding up of said estate and has no preference whatever." It will be seen at once that in holding that the demurrer to paragraphs 19 and 20 should have been sustained, a ruling is made upon the controlling question in this case, for, if the demurrer should have been sustained to these paragraphs, then the exceptions of the plaintiff in error to the decree must also be sustained as valid, because the decree as finally rendered gives effect to the contention of the petitioners as embodied in paragraphs 19 and 20, which we have held should have been stricken. We base our holding that paragraphs 19 and 20 of the petition should have been stricken on the provisions of the statute known as the banking law. This statute declares in express terms that an estate in the hands of administrators "shall be liable in like manner and to the same extent as the . . intestate . . would be if living and competent to act and hold the stock in his own name." Acts 1919, p. 189, Park's Code Supp. 1922, § 2279(b). Under our construction of this statute, the estate of the decedent here is liable on the execution "in like manner and to the same extent" as Nichols would be if he were living. It can not be disputed that under the provisions of this statute, if Nichols had been living on November 27, 1928, he would have been liable to depositors equally and ratably with other stockholders of the bank, over and beyond the par value of his stock, in an amount equal to the face value of his stock. Park's Code Supp. 1922, § 2279(a). In accordance with the provisions of the statute, within ninety days from the failure of the bank the superintendent of banks would have made an estimate

of the cash value of the assets of the insolvent bank and of the amount that would be available to pay depositors. This would have been followed by making an assessment upon the stockholders and notice to them of the assessment. This would have been followed by the issuance of an execution against stockholders failing to pay. And from the time of placing such an execution of record on the general execution docket, it would have become a lien as against the party named in the execution, and would have been enforced in like manner as superior court executions are enforced; and such an execution would have been final process in case no affidavit of illegality had been filed, contesting the legality of the assessment or its amount or necessity. Acts 1919, p. 160, Acts 1925, pp. 119, 129; Park's Code Supp. 1928, § 2268(t). If the decedent, Nichols, had been living and he had not paid or contested the assessment, and the necessary steps had been taken preliminary to the issuance of the execution and placing it on the execution docket, the execution would have been entitled to payment in full to the exclusion of all the creditors who are parties to this suit and whose claims are evidenced only by promissory notes. In that event the execution would have been a lien upon all of the decedent's property, and the holders of promissory notes would not have been entitled to anything until the lien creditors had been satisfied in full. Under the provisions of § 2279(b), quoted above, the manner and extent of the liability of Nichols, the decedent, is the same as it would have been if Nichols had not died. Section 4000 of the Civil Code, under which the holders of the notes involved in this case might have claimed priority, can not apply in the face of § 2279(b). In so far as section 4000, fixing priority of debts, is in conflict with section 2279(b), the former was repealed by necessary implication.

There is no occasion here to go into a discussion of the wisdom of the law passed by the legislature; we have sought only to ascertain its meaning and to give it the proper construction. The execution issued by the superintendent of banks, being uncontested by affidavit of illegality and having become final process, was properly put upon the execution docket, and the enforcement of it was not postponed to the expiration of twelve months from the appointment of the administrators of Nichols, the decedent. Under section 2279(b), a deceased stockholder is liable "in like manner and

to the same extent" as a live stockholder. This may be a drastic provision, but it was competent for the legislature to make it, carrying out a public policy of protecting depositors of a bank to the fullest extent.

■ The part of the act of the General Assembly entitled "An act to regulate banking in the State of Georgia," etc., approved August 16, 1919 (Acts 1919, p. 135), which provides that the estates and funds in the hands of administrators of deceased stockholders "shall be liable in like manner and to the same extent as . . the intestate would be, if living and competent to act and hold the stock in his own name," is not void as repugnant to article 3, section 7, paragraph 8, of the constitution of the State, wherein it is provided that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." Nor is that part of the banking law last referred to in contravention of article 3, section 7, paragraph 17, of the constitution, which declares that "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." Upon the main bill of exceptions the

*Judgment is reversed in part and affirmed in part; upon the cross-bill affirmed. All the Justices concur, except Russell, C. J., who dissents, and Hill, J., disqualified.*